**Robert Alworth JOHNSON, Executor of the Estate of Nell Gay Johnson, Appellant,**

v.

**VIEWCREST NURSING HOME, et al., Respondents.**

No. C2–87–590.

Court of Appeals of Minnesota.

Aug. 25, 1987.

Newton S. Friedman, Duluth, for appellant.

Frederick A. Dudderar, Jr., David Ludwigson, Hanft, Fride, O'Brien, Harries, Swelbar & Burns, Duluth, for respondents.

Considered and decided by PARKER, P.J., and WOZNIAK and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

This action, begun pursuant to Minn. Stat. § 256B.48, subd. 1 (1986), seeks treble damages, attorney fees and costs for de-

layed refunding of overpayments for nursing home care paid by Nell Gay Johnson, deceased, to the Viewcrest Nursing Home. Both parties moved for summary judgment. The trial court granted summary judgment for the nursing home and Johnson appeals. We affirm.

## FACTS

Nell Gay Johnson was a private paying resident of the Viewcrest Nursing Home until her death on November 3, 1982. During her residency, she was charged a higher rate for the nursing home services than the residents who were paid for by county public assistance. In 1976 the Minnesota legislature enacted Minn.Stat. § 256B.48, a private rate equalization statute. The law requires equal charges for basic services for medical assistance and nonmedical assistance residents. Any discrepancies in charges in excess of ten percent between private paying residents and the county public assistance residents had to be identified and refunded. The overpayments could be paid to the resident, the resident's legal representative, or the resident's successor in interest (a duly-appointed representative of the estate).

When Nell Gay Johnson died in 1982, her stepson, Robert Johnson, was the personal representative of her estate. The estate was probated and completed in 1984 and Johnson was discharged from his duties as personal representative. On October 31, 1985, the nursing home notified Newton Friedman, an attorney who it knew had participated in the probate of the estate, that under the private rate equalization statutes Nell Johnson was entitled to a refund of $8,231.38. The notice included a claim form requiring a court-appointed personal representative and an indemnity agreement, both of which had to be completed to claim the refund.

Processing the repayment was postponed while the rate equalization law was under review by the Federal Trade Commission and the Justice Department for possible anti-trust concerns. In a series of correspondence from December 18, 1985 until April 11, 1986, Viewcrest kept Friedman apprised of delays due to the reviews and difficulties determining which rate to use in calculating the refunds. Finally, May 1, 1986 was targeted as the date to begin the refund process.

Friedman waited until June 5, 1986 to file the necessary petition with the probate court to have Robert Johnson reappointed as Nell's personal representative. He had possessed the forms since October of the previous year, a period of eight months. Johnson was reappointed July 17, 1986 and the letters of administration were mailed to Friedman on August 4, 1986, after the July 1, 1986 payment deadline that triggers the treble damages award.

On August 15, 1986, Friedman returned to Viewcrest the completed form, the indemnity agreement and a copy of the appointment of Robert Johnson as personal representative of Nell Johnson's estate.

A refund of $8,231.38, plus interest from October 1985, was requested. After two letters and telephone calls inquiring about the status of the refund, Johnson filed a court action on September 24, 1986 for the refund, plus interest, treble damages (as provided by statute), costs and disbursements, and attorney fees. Viewcrest, which had been processing the refund, held the check when served with the complaint. One month later, Viewcrest's attorney released a refund check for $8,377.59 to Friedman. The sum was accepted only after both parties agreed it would not preclude continuing the suit against Viewcrest.

Both parties brought motions for summary judgment. The trial court granted Viewcrest's motion for summary judgment and denied Johnson's motion for $21,795.18 (treble damages of $25,132.77, less $8,377.59 already paid or $16,755.18, plus $40 in filing fees and costs, and $5,000 in attorney fees). Johnson appeals.

## ISSUE

Is Viewcrest Nursing Home liable for treble damages, costs and attorney fees under Minn.Stat. § 256B.48 and Laws of Minnesota Ch. 420, § 16 (1986) for failing

to refund excess nursing home charges on or before July 1, 1986?

## ANALYSIS

The 1976 private rate equalization law has been amended five times. The original version of the law did not have a penalty for failure to comply. The 1984 amendment added a treble damages penalty for failure to comply, but no time limit to indicate when the penalty would be invoked. The 1986 amendment added July 1, 1986 as a deadline for repaying the overcharges.

The 1986 amendment states in relevant part:

> Any current or previous nursing home provider obligated pursuant to a written agreement or otherwise to refund to a private paying resident, the resident's legal representative, or the resident's successor in interest, excess charges made in violation of Section 256B.48, subdivision 1, clause (a), since July 1, 1976, shall refund the excess charges plus interest to the private paying resident, the resident's legal representative, or the resident's successor in interest before July 1, 1986. * * * However, where a current or previous nursing home provider has notified a resident, the resident's legal representative, or the resident's successor in interest, that the resident is due a refund and the refund is unclaimed, or if the resident, the resident's legal representative, or the resident's successor in interest cannot be located, the provider is exempt from any cause of action for civil damages.

Laws of Minnesota, Chapter 420, § 16 (1986), enacted March 24, 1986, effective the day after enactment.

In October 1985, Viewcrest notified Friedman that a refund was due and provided him with the necessary forms to designate the refund recipient. Friedman did not file the petition to have Robert Johnson reappointed as personal representative until the following June of 1986, eight months later. Admittedly, Viewcrest continued to postpone processing the refund while it awaited results of various reviews. However, it was not until Viewcrest received the forms from Friedman on August 14, 1986, ten months after Viewcrest sent them, that it had a court-appointed successor in interest for the decedent and therefore someone to whom it could release the check.

Johnson argues the delay was entirely on the part of the nursing home and that at no time during the postponements in 1985 and 1986 did Viewcrest raise the lack of a personal representative as a reason for the delay. However, the form Friedman received in October 1985 stated that the nursing home needed the forms filled out and the court-appointed personal representative named before it could process the refund and release the check.

Robert Johnson became Nell Johnson's successor in interest when he was appointed the personal representative of her estate. At that time, he became eligible to claim the refund. The nursing home began processing the check upon receipt of the form with the August 15, 1986 correspondence. Viewcrest maintains the check was processed within 45 days (August 16—September 27 = 41 days) of receipt of the forms.

It appears from the language of the statute and the facts of the case that even if Viewcrest had not delayed the refund process while awaiting the outcomes of the different reviews, it still could not have issued the refund until it received the necessary claiming forms. Although part of the delay in reappointing Johnson personal representative is attributed to delays in the probate court, Friedman still waited from October 1985 to June 1986 before filing the petition with the court.

As the trial court noted in its Memorandum in support of the Order for Judgment:

> [B]oth sides were slow in processing their part of this claim and the payment thereof, but it becomes apparent that after the July 1, 1986 deadline, there was not a representative appointed for Mrs. Johnson so that no successor in interest was available for payment at that time. The court feels that this is not a case for

the assessment of penalties or attorney's fees.

We agree.

## DECISION

Affirmed.